IN THE BANKRUPTCY COURT OF THE UNITED STATES
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG (DANVILLE) DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 13 |
| | : | |
| WILLIAM LEE FISHER | : | CASE NO. 14-61076 |
| | : | |
| Debtor. | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

| | |
|---|---|
| MARTINSVILLE DUPONT CREDIT UNION | : |
| | : |
| Movant, | : |
| | : |
| v. | : |
| | : |
| WILLIAM LEE FISHER | : |
| | : |
| and | : |
| | : |
| CHRISTOPHER T. MICALE, TRUSTEE | : |
| | : |
| Respondents. | : |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

## MOTION TO TERMINATE,
## ANNUL, MODIFY OR CONDITION THE AUTOMATIC STAY

TO THE HONORABLE JUDGE:

Comes now your Movant, Martinsville Dupont Credit Union
(herein "Credit Union"), by counsel, and for its Motion To
Terminate, Annul, Modify Or Condition The Automatic Stay,
pursuant to §362 (d) of the United States Bankruptcy Code (the
"Bankruptcy Code"), respectfully represents as follows:

1.   This is a core proceeding within the meaning of the
     Bankruptcy Code and Bankruptcy Rules.

2.  William Lee Fisher ("Debtor") filed a Petition seeking relief under Chapter 13 of the Bankruptcy Code on June 4, 2014.

3.  Christopher T. Micale was appointed as Trustee and is currently acting in that capacity.

4.  Credit Union waives the right to have the initial hearing in this matter scheduled within 30 days of the filing of this Motion and consents to the initial hearing being set on October 27, 2014, at 10:00 a.m.

5.  At the time of the filing of the Petition, Debtor had an ownership and/or equitable interest in and to the following (collectively referred to as "the property"):

A.  307 Starling Avenue, Martinsville, VA 24112 (First Deed of Trust)

1.  Debtor executed a Deed Of Trust and Adjustable Payment Deed Of Trust Note in the original principal amount of $56,000.00 on June 20, 2001, and MDCU is the holder of a properly-perfected security interest in the real estate.  A copy of the Deed Of Trust and Note are attached hereto as Exhibits A and B and are made a part hereof.

2.  As of August 20, 2014, Debtor, exclusive of legal fees and costs, and other charges payable, owed a

total approximate amount of $34,837.87. This sum included $34,394.46 in principal balance, $393.41 in accrued interest for the time period of, approximately, April 30, 2014, through August 20, 2014, and $50.00 in late charges for the time period of, approximately, April 30, 2014, through August 20, 2014.

3.   As of August 20, 2014, exclusive of legal fees and any other charges accruing after that date, the arrearages due under the Note were approximately $2,164.02, the Debtor being due for the March 31, 2014, regular payment. Regular payments due under the Note are $394.32 per month.

4.   In addition to the payment of principal, interest and other charges, the Note provides for the payment of reasonable legal fees. The current hourly rate for Luis A. Abreu is $275.00.

5.   The tax value of the real estate was $137,300.00 as of approximately August 20, 2014. However, the condition of the property and Debtor's continuing default may mean that equity is speculative.

6. As of August 20, 2014, the per diem interest charge was $3.2981.

B. **413 Church Street, Martinsville, VA 24112 (Second Deed of Trust)**

   1. Debtor executed a Deed Of Trust and Note in the original principal amount of $26,000.00 on November 16, 2001, and MDCU is the holder of a properly-perfected security interest in the real estate.  A copy of the Deed Of Trust and Note are attached hereto as Exhibits C and D and are made a part hereof.

   2. As of August 20, 2014, Debtor, exclusive of legal fees and costs, and other charges payable, owed a total approximate amount of $9,463.32.  This sum included $9,302.36 in principal balance, $114.18 in accrued interest for the time period of, approximately, April 30, 2014, through August 20, 2014, and $46.78 in late charges for the time period of, approximately, April 30, 2014, through August 20, 2014.

   3. As of August 20, 2014, exclusive of legal fees and any other charges accruing after that date, the arrearages due under the Note

were approximately $1,163.10, the Debtor

being due for the March 31, 2014, regular

payment.  Regular payments due under the

Note are $209.58 per month.

4.    In addition to the payment of principal,

interest and other charges, the Note

provides for the payment of reasonable legal

fees.  The current hourly rate for Luis A.

Abreu is $275.00.

5.    The tax value of the real estate was

$65,600.00 as of approximately August 20,

2014.  However, the condition of the

property and Debtor's continuing default may

mean that equity is speculative.

6.    As of August 20, 2014, the per diem interest

charge was $1.0194.

6.   The Debtor is in default under the terms of the Notes

and is knowingly and intentionally continuing to fail

to make payments to Credit Union.

7.   Debtor has not offered to adequately protect Credit

Union.

8.   There is little, if any, equity value in the property,

and it is of burdensome value to the estate, and that

after completing the foreclosure sale and paying all

amounts required to be paid to creditors and

foreclosure expenses under Virginia law as a result of

the foreclosure sale, that any remaining equity be

paid to the Trustee.

WHEREFORE, Credit Union respectfully prays that upon a

hearing on its Motion that, pursuant to Sections 362(d) of the

Bankruptcy Code that the automatic stay be modified and that the

Debtor be required to turn over the property to Credit Union so

that it may foreclose on the subject property, that if any

equity results from the foreclosure sale of the property, such

equity should be required to be turned over to the bankruptcy

estate, and that it be provided such further relief as is just.

MARTINSVILLE DUPONT CREDIT UNION

By Counsel

Counsel:

LUIS A. ABREU, Attorney at Law
P.O. Box 1598
626 North Ridge Street
Danville, VA 24543
Telephone:   434-791-4677
FAX:         434-791-4676

By_____/S/ LUIS A. ABREU_____
   Luis A. Abreu
   Virginia Bar ID No. 20996

## CERTIFICATE OF SERVICE

I, Luis A. Abreu, of counsel for Martinsville Dupont Credit Union, hereby certify that a true and correct copy of this Motion To Terminate, Annul, Modify Or Condition The Automatic Stay was mailed by first-class mail, postage pre-paid to:

William Lee Fisher, *pro se*
5697 Oak Level Road
Bassett, VA

and was sent by electronic transmission to:

Christopher T. Micale
Trustee
P.O. Box 1001
Roanoke, VA 24005; and to

U.S. Trustee
Office of the United States Trustee
210 First Street, Suite 505
Roanoke, VA 24011

this 22nd day of August, 2014.

_____/S/ LUIS A. ABREU____
LUIS A. ABREU

## NOTICE TO DEBTOR

If, within thirty days after receipt of this document, you do not dispute the amount of this debt, or any portion thereof, the undersigned will assume the debt is valid.  If you dispute this debt or any portion thereof, upon written request within thirty days following receipt of this letter, the undersigned will obtain a verification of the debt and a copy of the verification will be mailed to you.  Also, upon written request within thirty days of receipt of this letter, the undersigned will provide you with the name and address of the original creditor if different from the present holder of your debt obligations.

YOU ARE ADVISED THAT WE HAVE BEEN REQUESTED TO ENFORCE THE CREDITOR'S CLAIM AGAINST YOU.  ANY INFORMATION OBTAINED FROM YOU MAY BE USED FOR THE PURPOSES OF ENFORCING THE DEBT.



This Instrument was drafted by:                                    TMR/PIN:

The Office of John W. Swezey, Esq.
            (Name/Entity)

_____ [Space Above This Line For Recording Data]   TAX PARCEL NO. 43(02)C/26,25B

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on   the 20th day of June, 2001.
The grantor is

WILLIAM L. FISHER       ("Borrower"). The trustee is
ARTHUR EMBERSON

a resident of the Commonwealth of Virginia, whose full residence or business address is
        P. O. Box 2158                                    Martinsville,
                [Street]                                          [City]

Virginia       24113       , and         DARRELL MINNIEAR
         [Zip Code]

a resident of the Commonwealth of Virginia, whose full residence or business address is
        P. O. Box 2158                                    Martinsville,
                [Street]                                          [City]

Virginia       24113       , trustees (any one of whom may act and who are referred to as "Trustee"). The
         [Zip Code]

beneficiary is  MARTINSVILLE DUPONT CREDIT UNION
which is organized and existing under the laws of  the State of Virginia       , and whose address is
        P. O. Box 2158, Martinsville, Virginia  24113


                                    ("Lender"). Borrower owes Lender the principal sum of

FIFTY-SIX THOUSAND AND NO/100——————————————————————————————
Dollars (U.S. $56,000.00       ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on    July 5, 2021          . This Security Instrument secures to Lender: (a) the repayment
of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following
described property located in        the City of Martinsville              , Virginia:


SEE ATTACHED SCHEDULE "A"


VIRGINIA - Single Family - Fannie Mae/Freddie Mac Uniform Instrument                Form 3047 9/90

                                                              GREATLAND ■
                                            To Order Call: 1-800-530-6393 □ Fax 616-791-1131
ITEM 1990 (0007)                          (Page 1 of 8 pages)



which has the address of          307 Starling Avenue                    Martinsville,
                                     [Street]                                [City]

Virginia          24112              ("Property Address");
                 [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Form 3047 9/90
GREATLAND ■
To Order Call  1-800-530-9393 □ Fax 616-791-1131

ITEM 1860 (0057)

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3.  **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4.  **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.  **Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.  **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal

Form 3047 9/90

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7.    **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8.    **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9.    **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10.    **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds

multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11.  **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12.  **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13.  **Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14.  **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15.  **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

16.  **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

Form 3047 9/90

GREATLAND ■
To Order Call: 1-800-530-9393 ☐ Fax 616-791-1131

17. **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. **Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. **Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the

action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of        5        % of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to sale thereof or to deliver possession of the Property to the purchaser at the sale.

22.    **Release.**  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23.    **Substitute Trustee.**  Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24.    **Identification of Note.**  The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.

Form 3047 9/90

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

ITEM 1990 (0007)

25. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) [specify] Adjustable Payment Rider | | |

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____(Seal)
William L. Fisher                        -Borrower

_____(Seal)
                                                -Borrower

_____(Seal)
                                                -Borrower

_____(Seal)
                                                -Borrower

_____(Seal)
                                                -Borrower

_____(Seal)
                                                -Borrower

Witness:                                      Witness:

STATE OF VIRGINIA,                    Commonwealth at large,

The foregoing instrument was acknowledged before me this   the 20th day of June, 2001
                                                                                    [date]

by      William L. Fisher

[person acknowledging]

_____
Carolyn M. Neighbor              Notary Public

My Commission expires: November 30, 2004

Form 3047 9/90
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

ITEM 1990 (0007)                    *(Page 8 of 8 pages)*

## ATTACHMENT - SCHEDULE "A"

**Parcel No. 1:** All that certain lot or parcel of land situated on the South margin of Starling Avenue, City of Martinsville, Virginia, and being bounded and described according to map of record in the City of Martinsville Circuit Court Clerk's Office in Map Book 6, page 97, as follows, to-wit:

BEGINNING at a stake on the South margin of Starling Avenue; thence with Starling Avenue 111.77 feet to a stake; thence leaving Starling Avenue, South 37 deg. 27 min. East 241.92 feet to a stake on the North Margin of alley; thence with alley, North 67 deg. East 65.04 feet to stake; thence North 26 deg. 22 min. West 250.02 feet to beginning.

**Parcel No. 2:** All that certain lot or parcel of land lying on the southeast side of Starling Avenue in the City of Martinsville, Virginia, and being known as Lot 25-B as shown on survey for Thenia L. Pannill and J. Curtis Vernon as prepared by J. A. Gustin, C.L.S., on December 12, 1980, and recorded in the City of Martinsville Circuit Court Clerk's Office, an described as follows, to-wit:

BEGINNING at a concrete monument on the southeast side of Starling Avenue at the southeast corner of Lot 26; thence with the line of Lot 26, South 39 degrees 50 minutes 04 seconds East 242.05 feet to an iron pin in the north line of a 25-foot alley space; thence with said alley space, South 29 degrees 37 minutes 49 seconds West 12.20 feet; thence with the line of Lot 25-A North 39 degrees 38 minutes 10 seconds West 244.75 feet to an iron pin on the southeast side of Starling Avenue; thence with Starling Avenue, North 41 degrees 39 minutes 18 seconds East 10.69 feet to the point of beginning.

BEING the same property conveyed to William L. Fisher by deed dated the 6th day of November, 1986, from The Estate of John J. A. Sanders, Sr., John J. A. Sanders, Jr. and Barbara Ann S. Ashby, Co-Executors, of record in Deed Book _____, page _____ of the City of Martinsville Circuit Court Clerk's Office.

<u>     WLF     </u>  Initials

# ADJUSTABLE PAYMENT RIDER

ADJUSTABLE PAYMENT RIDER is made this __20th__ day of __June, 2001__, 19___, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Payment Deed of Trust Note to the Martinsville DuPont Credit Union, Inc. (the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at:

        307 Starling Avenue, Martinsville, Virginia  24112

NOTE EVIDENCING THE INDEBTEDNESS SECURED BY THE AFOREMENTIONED SECURITY INSTRUMENT CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENTS:

ADDITIONAL COVENANTS - In addition to the covenants and agreements made in the Security Instrument, Borrower(s) and Lender further covenant and agree as follows:

INTEREST RATE AND MONTHLY PAYMENT CHANGES
The provides for an initial interest rate of __5.75__ %. Sections 2, 3, 4 and 5 of the Note provide for changes in the interest rate and monthly payment; as well as the option to extend, suspend or renegotiate monthly payments as follows:

2. INTEREST
   (A) Interest Owed
   Interest will be charged on that part of principal which has not been paid. Interest will be charged beginning on the date note and continuing until the full amount of principal has been paid.

   Beginning on the date of this note, I (we) owe interest at a yearly rate of __5.75__ %. This is the base rate and shall remain the throughout the first one (1) year period of the total amortized life of the loan. The rate of interest I (we) owe will change adjusted at the end of the first (1st) year of the total amortized period, which in this case is __30__ years. The rate of interest I (we) owe will change on the __20th__ day of __June, 202__, 19___, and on that day every twelfth (12th) month thereafter.

   (B) The Index
   The hereinabove referenced changes in the interest rate shall occur at the end of each twelfth (12th) month period, and changes in the interest shall be sufficient to cause the interest rate to equal the prevailing interest rate charged by the Credit Union similar mortgage loans, less any fees or surcharges in existence, on the twelfth month anniversary date. The rate of interest are required to pay shall never be increased on any single change date by more than __two__ percentage points. Further, the rate will not be adjusted at any time during the period covered by this contract to a rate which exceeds the base rate by more than __six__ percentage points. My (our) interest rate shall never be greater than __11.75__ %.

No contentioned language is intended, and shall be so construed, as establishing a ceiling on the maximum allowable interest rate at any one time.

3. PAYMENTS
   (A) Time and Place of Payments
   I (we) will make my (our) monthly payments on the __5th__ day(s) of each month beginning on __August 5, 2001__19___ will make these payments every month until I (we) have paid all the principal and interest and any other charges hereinabove and that I (we) may owe under this Note. If I (we) still owe amounts under this Note on the maturity date, I (we) will pay those is in full on that date.

   I (we) will make my (our) monthly payments at the office of the Martinsville DuPont Credit Union, at P. O. Box 2158, ville, Virginia, or at a different place if required by the Note Holder.

   (B) Amounts of Monthly Payments
   Subject to first rate change which shall occur at the end of the twelfth (12th) month, it is understood that my (our) payments shall be __Three Hundred Ninty-four and 32/100--__ Dollars.

   In the event that the interest rate is adjusted, then the Borrower(s) agree to make payments in an amount sufficient to the payment and satisfaction in full of the total indebtedness owing hereunder in accordance with the originally established date as shown in Paragraph 1 of the "Adjustable Payment Deed of Trust Note."

**4. BORROWER'S RIGHT TO REPAY**

Borrower(s) may prepay the principal amount outstanding in whole or in part. Should the Borrower(s) elect to pay off loan within the first 60 months of the amortized life than the Lender, Martinsville DuPont Credit Union, Inc., may in its discretion, charge a 2% prepayment penalty on any and all payments made over and above the aforementioned scheduled payments. It is lly within the discretion of the Lender as to whether or not the aforesaid prepayment penalty shall be collected, and in what amos.

Upon the expiration of 60 months of the amortized life of this loan, then Martinsville DuPont Credit Union, Inc. shall not or any circumstances have the right or privilege of collecting any prepayment penalty whatsoever; and upon the expiration of the amentioned time period (in this instance 60 months) then the Borrower(s) shall have the express right to pay off the then anding indebtedness in whole or in part without the levy of any prepayment penalty.

**5. LENDER'S OPTION TO EXTEND, SUSPEND, OR RENEGOTIATE MONTHLY PAYMENTS HEREUNDER**

It is expressly understood by the parties hereto that Martinsville DuPont Credit Union, Inc., shall have the option of riding the Borrower(s) with an extension of time within which to make any one or more of the above scheduled payments. In tion, Lender shall have the express option of suspending any one or more of the aforementioned payments upon being furnished of of any adequate and justifiable reason warranting such suspension and upon due and timely request made by the Borrower(s) is. Further, should the Borrower(s) be laid off for either health or business reasons, or should Borrower(s) find (himself) self) (themselves) working short time, the Lender shall have the option of reworking and renegotiating the terms and conditions payment hereinabove set forth under Paragraph 1.

**B. TRANSFER OF THE PROPERTY; ASSUMPTION**

l or any part of the property or any interest therein is sold or transferred by the Borrower without Lender's prior written consent, uding (a) the creation of lien or encumbrance subordinate to this Security Instrument which does not relate to a transfer of right ompancy in the property; (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, ent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not aining an option to purchase, Lender may, at Lender's option, declare all the sums secured by this Security Instrument to imme- tly due and payable.

nder exercises such option to accelerate, Lender shall mail Borrower notice of acceleration. Such notice shall provide a period x less than thirty (30) days from the date the notice is mailed within which Borrower may pay the sums declared due. If ower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, lve any remedies permitted by law.

ler may consent to a sale or transfer if: (1) Borrower causes to be submitted to Lender information required by Lender to ate the transferee as if a new loan were being made to the transferee; (2) Lender reasonably determines that Lender's security not be impaired and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable; (3) interest be payable on the sums secured by this Security Instrument at a rate acceptable to Lender; (4) changes in the terms of the Note his Security Instrument required by Lender are made, including for example, periodic adjustment in the interest rate, a different payment date for the loan, and addition of unpaid interest to principal; and (5) the transferee signs an assumption agreement that ceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security ument, as modified if required by Lender. To the extent permitted by applicable law, Lender also may charge a reasonable fee condition to Lender's consent to any sale of transfer.

ower will continue to be obligated under this note and Security Instrument unless Lender releases Borrower in writing.

**C. LEGISLATION**

ter the date hereof, enactment or expiration of applicable laws have the effect either of rendering the provisions of this Note, the rity Instrument or this Adjustable Rate Rider (other than this Paragraph C) unenforceable according to their terms, or all or any of the sums secured hereby uncollectable, as otherwise provided in the Security Instrument and this Adjustable Rate Rider, or of rishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by the Security Instrument immediately due and payable.

IN WITNESS WHEREOF, Borrower(s) has (have) executed this Adjustable Payment Rider the day and year first above
en:

_William L. Fisher_ _____ (SEAL)
William L. Fisher

_____ (SEAL)

_____ (SEAL)
INSTRUMENT #0100765
RECORDED IN THE CLERK'S OFFICE OF
MARTINSVILLE ON
JUNE 20, 2001 AT 03:51PM _____ (SEAL)
ASHBY R. PRITCHETT, CLERK
BY: _Therda V. _____

# ADJUSTABLE PAYMENT
# DEED OF TRUST NOTE

### THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENTS

Martinsville, Virginia.

June 20,                     20 01

**OBLIGATION OF BORROWER(S)**

For value received, the undersigned, __WILLIAM L. FISHER__ jointly and severally promise (s) to pay to the Martinsville Dupont Employees Credit Union, Inc. or Order without offset, the principal sum of __FIFTY-SIX THOUSAND AND NO/100__——————————————Dollars ($ 56,000.00 ), with interest from date at the rate of __five and__ per centum ( 5.75 %) per annum on the unpaid balance until paid. The said principal and interest shall be payable at the office of the Martinsville Dupont Employees Credit Union, Inc. P. O. Box 2158, Martinsville, Virginia, in successive and consecutive monthly installments of __Three Hundred Ninety-four and 32/100__——————————————Dollars ($394.32 ), commencing on the __5th__ day of __August__ , 20 01 , and on the __5th__ day of each month thereafter until the principal and interest are fully paid, except that the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable on the __5th__ day of __July__ , 20 21.

**INTEREST**

**(A) Interest Owed**

Interest will be charged on that part of principal which has not been paid. Interest will be charged beginning on the date of this note, and continuing until the full amount of principal has been paid.

Beginning on the date of this note, I (we) will owe interest at a yearly rate of 5.75 %; this is the basic rate and shall remain effective throughout the first one (1) year period of the total amortized life of this loan. The rate of interest I (we) will owe will change or be adjusted at the end of the first year of the total amortized period, which in this case is __twenty__ ( 20 ) years. The rate of interest I (we) owe will change on the __20th__ of the month of __June__ , 2002 and on that day every twelfth month thereafter.

**(B) The Index**

The here-in-above re-herenofed changes in the interest rate shall occur at the end of each twelfth (12th) month period, and such changes in the interest rate shall be sufficient to cause the interest rate to equal the prevailing interest charged by the Credit Union on similar mortgage loans, less any fees or surcharges in existence, on the twelfth (12th) month anniversary date. The rate of interest I (we) are required to pay shall never increase on any single change date by more than two (2) percentage points. Further, the interest rate will not be adjusted at any time during the period covered by this contract on a rate which exceeds the basic rate by more than six of interest I (we) will owe will change or be adjusted at the end of the first year of the total amortized period, which in this case is __six__ ( 6 ) percentage points. My (our) interest rate shall never be greater than __11.75__ %.

The aforementioned language is intended, and shall be so construed, as establishing a ceiling on the maximum allowable interest rate changes at any one time.

**PAYMENTS**

**(A) Time and Place of Payments**

I (we) will pay principal and interest by making payments every month. My (our) monthly payments will be applied to interest before principal.

I (we) will make my (our) monthly payments on the __5th__ day of each month beginning on __August 5,__ , 20 01. I (we) will make these payments every month until I (we) have paid all the principal and interest and any other charges hereinafter described that I (we) may owe under this Note. If I (we) still owe amounts under this Note on the maturity date, I (we) will pay those amounts in full on that date.

I (we) will make my (our) monthly payments at the office of the Martinsville Dupont Employees Credit Union, Inc. at P. O. Box 2158, Martinsville, Virginia 24113, or at a different place if required by the Note Holder.

**(B) Amount of monthly payments**

Subject to the first rate change which shall occur at the end of one year, it is understood that my (our) monthly payments shall be __Three Hundred Ninety-four and 32/100__——————————————dollars.

In the event that the interest rate is adjusted, the Borrower(s) agree to make payments in an amount sufficient to allow for the payment and satisfaction in full of the total indebtedness owing hereunder in accordance with the originally established maturity date as shown in Paragraph 1

ALL-STATE LEGAL®

**EXHIBIT**

B

**1. BORROWER'S RIGHT TO PREPAY**

Borrower(s) may prepay the principal amount outstanding in whole or in part. Should the Borrower(s) elect to pay off the loan within the first 60 months of the amortized life then the Lender, Martinsville DuPont Credit Union, Inc., may in its discretion, charge a 2% prepayment penalty on any and all payments made over and above the aforementioned scheduled payments. It is totally within the discretion of the Lender as to whether or not the aforesaid prepayment penalty shall be collected, and in what instances.

Upon the expiration of 60 months of the amortized life of this loan, then Martinsville DuPont Credit Union, Inc. shall not under any circumstances have the right or privilege of collecting any prepayment penalty whatsoever, and upon the expiration of the aforementioned time period (in this instance 60 months) then the Borrower(s) shall have the express right to pay off the then outstanding indebtedness in whole or in part within the levy of any prepayment penalty.

**LENDER'S OPTION TO EXTEND, SUSPEND, OR RENEGOTIATE MONTHLY PAYMENTS HEREUNDER**

It is expressly understood by the parties hereto that Martinsville Dupont Employees Credit Union, Inc. shall have the option of providing the Borrower (s) with an extension of time within which to make any one or more of the above scheduled payments. In addition, Lender shall have the express option of suspending any one or more of the aforementioned payments upon being furnished proof of an adequate and justifiable reason warranting such suspension, and upon due and timely request made by the Borrower (s) herein. Further, should the Borrower (s) be laid off for either health or business reasons, or should Borrower (s) find (himself) (herself) (themselves) working short time, then the Lender shall have the option of reworking and repaycalating the terms and conditions of repayment hereinabove set forth under Paragraph 1.

Not withstanding such extension, suspension or renegotiation of the payment as aforesaid, the within Note, as well as the Deed of Trust executed contemporaneously herewith shall remain in full force and effect, and shall be legally binding, and upon the happening of any of the aforesaid events, it shall not be necessary for the Borrower (s) to reexecute new instruments or documentation setting forth such modifications.

**DEFAULT**

If default be made in the payment of any installment under this Note, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Borrower (s) shall pay to the Note holder a late charge of five (5) percent of any monthly installment not received by the Note holder within ten (10) days after the installment is due.

**SECURED PROPERTY**

This Note is secured by a _____First_____ Deed of Trust of even date herewith, on property located in the City/ County of ___Martinsville___ and the State of ___Virginia___, to the Martinsville Dupont Employees Credit Union, Inc. conveying certain real estate therein described. The terms, covenants, conditions, provisions stipulations and agreements contained in said Deed of Trust contained are hereby made a part hereof to the same extent and with the same effect as if the same were fully set forth herein.

**PRESENTMENT, PROTEST AND NOTICE WAIVED**

Presentment, Notice of Dishonor, and Protest are hereby waived by all makers, sureties, guarantors and endorsers hereof. The drawers and endorsers of this Note also waive the benefit of the homestead exemption as to this debt. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon on them and their successors and assigns.

**ATTORNEY'S FEES**

If this Note is not paid at maturity, and is collected by suit or Attorney, the makers and endorsers hereof agree to pay, in addition to the amount of this Note, fifteen (15%) percent collection fees, together with reasonable Attorney's fees.

Address ___5697 Oak Level Road___          _William J. Fisher_          (SEAL)

___Bassett, VA 24055___                         William L. Fisher          (SEAL)

_____          _____ (SEAL)

This is to certify that this is the Adjustable Payment Deed of Trust Note described in and secured by a Deed of Trust, dated ___June 20___, 20_01_, on property located in ___Martinsville___, Virginia.

My Commission expires: ___11/30/04___

_Carolyn M. Neighbor_
Notary Public
Carolyn M. Neighbor



This Instrument was drafted by:    TMR/PIN:
The Office of
John W. Brown, Attorney at Law

Tax Map ID: 34 3 A 10

—————————————————— [Space Above This Line For Recording Data] ——————————————————

# DEED OF TRUST

THIS DEED OF TRUST ("Security Instrument") is made on   the 16th day of November, 2001
The grantor is    WILLIAM L. FISHER

("Borrower"). The trustee is

ARTHUR EMERSON
a resident of the Commonwealth of Virginia, whose full residence or business address is
P. O. Box 2158,                                      Martinsville
                                                        [City]

Virginia    24113       , and    DARRELL MINNEEAR
[Zip Code]

a resident of the Commonwealth of Virginia, whose full residence or business address is
P. O. Box 2158,                                      Martinsville
                                                        [City]

Virginia    24113       ; trustees (any one of whom may act and who are referred to as "Trustee"). The
beneficiary is  MARTINSVILLE DUPONT CREDIT UNION
which is organized and existing under the laws of  the State of Virginia          , and whose address is
P. O. Box 2158, Martinsville, Virginia   24113

("Lender"). Borrower owes Lender the principal sum of
TWENTY-SIX THOUSAND AND 00/100———————————————————————————————————
Dollars (U.S. $ 26,000.00          ). This debt is evidenced by Borrower's note dated the same date as this
Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and
payable on    December 1, 2016         . This Security Instrument secures to Lender: (a) the repayment
of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the
payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security
Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following
described property located in                                      Martinsville        , Virginia:


SEE ATTACHED SCHEDULE "A"

VIRGINIA - Single Family - Fannie Mae/Freddie Mac Uniform Instrument

(Page 1 of 8 pages)
Form 3047 9/90

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax 616-791-1131

EXHIBIT
C

ALL-STATE LEGAL®

which has the address of                413 Church Street,                    Martinsville,
                                        [Street]                              [City]

Virginia            24112                    ("Property Address");
                   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2.    **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Form 3047 9/90

ITEM 1660 (0607)

(Page 2 of 5 pages)

To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3.     Application of Payments.  Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4.     Charges; Liens.  Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5.     Hazard or Property Insurance.  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

6.     Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal

Form 3047 9/90

residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds

Form 3047 8/90

GREATLAND ■
To Reorder Call: 1-800-530-9393 □ Fax: 616-791-1131

ITEM 1800 (9407)

*(Page 5 of 8 pages)*

multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17.  **Transfer of the Property or a Beneficial Interest in Borrower.**  If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18.  **Borrower's Right to Reinstate.**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19.  **Sale of Note; Change of Loan Servicer.**  The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20.  **Hazardous Substances.**  Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21.  **Acceleration; Remedies.**  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the

action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender or Trustee shall give to Borrower (and the owner of the Property, if a different person) notice of sale in the manner prescribed by applicable law. Trustee shall give public notice of sale by advertising, in accordance with applicable law, once a week for two successive weeks in a newspaper having general circulation in the county or city in which any part of the Property is located, and by such additional or any different form of advertisement the Trustee deems advisable. Trustee may sell the Property on the eighth day after the first advertisement or any day thereafter, but not later than 30 days following the last advertisement. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by advertising in accordance with applicable law. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property with special warranty of title. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of            5            % of the gross sale price and reasonable attorneys' fees; (b) to the discharge of all taxes, levies and assessments on the Property, if any, as provided by applicable law; (c) to all sums secured by this Security Instrument; and (d) any excess to the person or persons legally entitled to it. Trustee shall not be required to take possession of the Property prior to sale thereof or to deliver possession of the Property to the purchaser at the sale.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to release this Security Instrument and shall surrender all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Substitute Trustee.** Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

24. **Identification of Note.** The Note is identified by a certificate on the Note executed by any Notary Public who certifies an acknowledgment hereto.



Form 3047 9/90

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-971-1131

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. (Check applicable box(es))

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☒ Other(s) [specify] Adjustable Payment Rider | | |

**NOTICE: THE DEBT SECURED HEREBY IS SUBJECT TO CALL IN FULL OR THE TERMS THEREOF BEING MODIFIED IN THE EVENT OF SALE OR CONVEYANCE OF THE PROPERTY CONVEYED.**

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_William L. Fischer_____ (Seal)        _____ (Seal)
William L. Fisher                        -Borrower                                 -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                                 -Borrower

_____ (Seal)        _____ (Seal)
                           -Borrower                                 -Borrower

Witness:                                    Witness:

_____              _____

STATE OF VIRGINIA,
COMMONWEALTH AT LARGE                            County ss:

The foregoing instrument was acknowledged before me this   16th day of November, 2001
                                                                                    [date]
by      William L. Fisher

[person acknowledging]

_Carolyn M. Neighbor_____
Carolyn M. Neighbor -                        Notary Public

My Commission expires:  November 30, 2004

Form 3047 9/90

GREATLAND ®
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

ITEM 1980 (9507)

*(Page 8 of 8 pages)*

## ATTACHMENT - SCHEDULE "A"

All that certain lot or parcel of land, together with the improvements thereon and appurtenances thereunto appertaining, belonging and situated in the City of Martinsville, Virginia, and being Lot #10 on map of property of Annie W. James, prepared by Moore and Gregory, Surveyors, in October, 1923, recorded in Map Book 1, page 8, of record in the Circuit Court Clerk's Office of Martinsville, Virginia, and more recently shown on plat of survey for Carla R. Hankins, prepared by Larry G. Rakes, L.L.S., dated April 26, 1999, of record in the aforesaid Clerk's Office; and,

INSTRUMENT #0101854
RECORDED IN THE CLERK'S OFFICE OF
MARTINSVILLE ON
NOVEMBER 16, 2001 AT 12:09PM
ASHBY R. PRITCHETT, CLERK

BY: _____ (DC)

# ADJUSTABLE PAYMENT RIDER

THIS ADJUSTABLE PAYMENT RIDER is made this __16th__ day of __November___, 20_01_, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Deed to Secure Debt (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Payment Deed of Trust Note to the Martinsville DuPont Credit Union, Inc. (the "Lender") of the same date (the "Note") and covering the property described in the Security Instrument and located at:

413 Church Street, Martinsville, Virginia  24112

THE NOTE EVIDENCING THE INDEBTEDNESS SECURED BY THE AFOREMENTIONED SECURITY INSTRUMENT CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENTS:

ADDITIONAL COVENANTS -- In addition to the covenants and agreements made in the Security Instrument, Borrower(s) and Lender further covenant and agree as follows:

A.  INTEREST RATE AND MONTHLY PAYMENT CHANGES
    The Note provides for an initial interest rate of 5.25 %. Sections 2, 3, 4 and 5 of the Note provide for changes in the interest rate and the monthly payments, as well as the option to extend, suspend or renegotiate monthly payments as follows:

    2.  INTEREST
        (A) Interest Owed.
        Interest will be charged on that part of principal which has not been paid. Interest will be charged beginning on the date of this Note and continuing until the full amount of principal has been paid.

        Beginning on the date of this Note, I (we) owe interest at a yearly rate of 5.25 %: This is the base rate and shall remain effective throughout the first one (1) year period of the total amortized life of this loan. The rate of interest I (we) owe will change or be adjusted at the end of the first (1st) year of the total amortized period, which in this case is _15_ years. The rate of interest I (we) owe will change on the 16th day of November 20_02_, and on that day every twelfth (12th) month thereafter.

        (B) The Index.
        The hereinabove referenced changes in the interest rate shall occur at the end of each twelfth (12th) month period, and such changes in the interest rate shall be sufficient to cause the interest rate to equal the prevailing interest rate charged by the Credit Union on similar mortgage loans, less any fees or surcharges in existence, on the twelfth month anniversary date. The rate of interest I (we) owe will change or be increased on any single change date by more than two (2) percentage points. Further, the interest rate will not be adjusted at any time during the period covered by this contract to a rate which exceeds the base rate by more than __six__ percentage points. My (our) interest rate shall never be greater than 11.25 %.

        The aforementioned language is intended, and shall be so construed, as establishing a ceiling on the maximum allowable interest rate change at any one time.

    3.  PAYMENTS
        (A) Time and Place of Payments.
        I (we) will make my (our) monthly payments on the _1st_ day of each month beginning on __January___, 20_02_. I (we) will make these payments every month until I (we) have paid all the principal and interest and any other charges hereinbefore described that I (we) may owe under this Note. If I (we) still owe amounts under this Note on the maturity date, I (we) will pay those amounts in full on that date.

        I (we) will make my (our) monthly payments at the office of the Martinsville DuPont Credit Union, at P. O. Box 2155, Martinsville, Virginia, or at a different place if required by the Note Holder.

        (B) Amounts of Monthly Payments
        Subject to first rate change which shall enter at the end of the twelfth (12th) month, it is understood that my (our) monthly payments shall be TWO HUNDRED NINE AND 58/100————————————————— Dollars.

        In the event that the interest rate is adjusted, then the Borrower(s) agree to make payments in an amount sufficient to allow for the payment and satisfaction in full of the total indebtedness owing hereunder in accordance with the originally established maturity date as shown in Paragraph 1 of the "Adjustable Payment Deed of Trust Note."

    4.  BORROWER'S RIGHT TO PREPAY
        Borrower(s) may prepay the principal amount outstanding in whole or in part.

**A. LENDER'S OPTION TO EXTEND, SUSPEND, OR RENEGOTIATE MONTHLY PAYMENTS HEREUNDER**

It is expressly understood by the parties hereto that Martinsville DuPont Credit Union, Inc., shall have the option of providing the Borrower(s) with an extension of time within which to make any one or more of the above scheduled payments. In addition, Lender shall have the express option of suspending any one or more of the aforementioned payments upon being furnished proof of any adequate and justifiable reason warranting such suspension and upon due and timely request made by the Borrower(s) herein. Further, should the Borrower(s) be laid off for either health or business reasons, or should Borrower(s) find (himself) (herself) (themselves) working short time, the Lender shall have the option of reworking and renegotiating the terms and conditions of repayment hereinabove set forth under Paragraph 1.

**B. TRANSFER OF THE PROPERTY; ASSUMPTION**

If all or any part of the property or any interest therein is sold or transferred by the Borrower without Lender's prior written consent, excluding (a) the creation of lien or encumbrance subordinate to this Security Instrument which does not relate to a transfer of right of occupancy in the property, (b) the creation of a purchase money security interest for household appliances, (c) a transfer by devise, descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase, Lender may at Lender's option, declare all the sums secured by this Security Instrument to immediately due and payable.

If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration. Such notice shall provide a period of not less than thirty (30) days from the date the notice is mailed within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by law.

Lender may consent to a sale or transfer if: (1) Borrower causes to be submitted to Lender information required by Lender to evaluate the transferee as if a new loan were being made to the transferee; (2) Lender reasonably determines that Lender's security will not be impaired and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable; (3) interest will be payable on the sums secured by this Security Instrument at a rate acceptable to Lender; (4) changes in the terms of the Note and this Security Instrument required by Lender are made, including for example, periodic adjustment in the interest rate, a different final payment date for the loan, and addition of unpaid interest to principal; and (5) the transferee signs an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument, as modified if required by Lender. To the extent permitted by applicable law, Lender also may charge a reasonable fee as a condition to Lender's consent to any sale or transfer.

Borrower(s) will continue to be obligated under this Note and Security Instrument unless Lender releases Borrower(s) in writing.

**C. LEGISLATION**

If, after the date hereof, enactment or expiration of applicable laws have the effect either of rendering the provisions of this Note, the Security Instrument or this Adjustable Rate Rider (other than this Paragraph C) unenforceable according to their terms, or all or any part of the sums secured hereby unenforceable, as otherwise provided in the Security Instrument and this Adjustable Rate Rider, or of diminishing the value of Lender's security, then Lender, at Lender's option, may declare all sums secured by the Security Instrument to be immediately due and payable.

IN WITNESS WHEREOF, Borrower(s) has (have) executed this Adjustable Payment Rider the day and year first above written:

_William L. Fisher_ _____ (SEAL)
William L. Fisher

_____ (SEAL)

_____ (SEAL)

_____ (SEAL)

# ADJUSTABLE PAYMENT
# DEED OF TRUST NOTE

## THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
## INTEREST RATE AND THE MONTHLY PAYMENTS

Martinsville, Virginia

November 16 , 20 01

**1. OBLIGATION OF BORROWER(S)**

For value received, the undersigned _____ WILLIAM L. FISHER _____ jointly and severally promise(s) to pay to the Martinsville Dupont Employees Credit Union, Inc. or Order without offset, the principal sum of _____ THIRTY-SIX THOUSAND AND 00/100 _____ Dollars (§ 36,000.00 ), with interest from the date of this Note, at the rate of five & one quarter per centum ( 5.25 %) per annum on the unpaid balance until paid. The said principal and interest shall be payable at the office of the Martinsville Dupont Employees Credit Union, Inc., P. O. Box 2158, Martinsville, Virginia, in 180 successive and consecutive monthly installments of _____ Dollars (§ 290.58 ), commencing on the 1st day of January , 20 02 , and on the 1st day of each month thereafter until the principal and interest are fully paid, except that the entire indebtedness evidenced hereby, if not sooner paid, shall be due and payable on the 1st day of December , 20 16 .

**2. INTEREST**

**(A) Interest Owed**
Interest will be charged on that part of principal which has not been paid. Interest will be charged beginning on the date of this Note and continuing until the full amount of principal has been paid.

Beginning on the date of this Note, I (we) will owe interest at a yearly rate of 5.25 %; this is the base rate and shall remain effective throughout the first one (1) year period of the total amortized life of this loan. The rate of interest I (we) will owe will change or be adjusted at the end of the first year of the total amortized period, which in this case is fifteen ( 15 ) years. The rate of interest I (we) owe will change on the 16th of the month of November , 20 02 , and on that day every twelfth month thereafter.

**(B) The Index**
The hereinabove referenced changes in the interest rate shall occur at the end of each twelfth (12th) month period, and such changes in the interest rate shall be sufficient to cause the interest rate to equal the prevailing interest charged by the Credit Union on similar mortgage loans, less any fees or surcharges in existence, on the twelfth (12th) month anniversary date. The rate of interest I (we) are required to pay shall never increase on any single change date by more than two (2) percentage points. Further, the interest rate will not be adjusted at any time during the period covered by this contract to a rate which exceeds the base rate by more than six ( 6% ) percentage points. My (our) interest rate shall never be greater than 11.25%.

The aforementioned language is intended, and shall be so construed, as establishing a ceiling on the maximum allowable interest rate change at any one time.

**3. PAYMENTS**

**(A) Time and Place of Payments**
I (we) will pay principal and interest by making payments every month. My (our) monthly payments will be applied to interest before principal.

I (we) will make my (our) monthly payments on the 1st day of each month beginning on January 1 , 20 02 . I (we) will make these payments every month until I (we) have paid all of the principal and interest and any other charges hereinafter described that I (we) may owe under this Note. If I (we) still owe principal under this Note on the maturity date, I (we) will pay those amounts in full on that date.

I (we) will make my (our) monthly payments at the office of the Martinsville DuPont Employees Credit Union, Inc., at P. O. Box 2158, Martinsville, Virginia 24113, or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**
Subject to the first rate change, which shall occur at the end of one year, it is understood that my (our) monthly payments shall be TWO HUNDRED NINE AND 58/100 _____ Dollars.

In the event that the interest rate is adjusted, the Borrower (s) agree to make payments in an amount sufficient to allow for the payment and satisfaction in full of the total indebtedness owing hereunder in accordance with the originally established maturity date as shown in Paragraph 1 above.

EXHIBIT

D

ALL-STATE LEGAL®

4. **BORROWER'S RIGHT TO PREPAY**
Borrower(s) may prepay the principal amount outstanding in whole or in part.

5. **LENDER'S OPTION TO EXTEND, SUSPEND, OR RENEGOTIATE MONTHLY PAYMENTS HEREUNDER**
It is expressly understood by the parties hereto that Martinsville DuPont Employees Credit Union, Inc., shall have the option of providing the Borrower(s) with an extension of time within which to make any one or more of the above scheduled payments. In addition, Lender shall have the express option of suspending any one or more of the aforementioned payments upon being furnished proof of an adequate and justifiable reason warranting such suspension, and upon due and timely request made by the Borrower(s) herein. Further, should the Borrower(s) be laid off for either health or business reasons, or should Borrower(s) find (himself) (herself) (themselves) working short time, then the Lender shall have the option of reworking and renegotiating the terms and conditions of repayment hereinabove set forth under Paragraph 1.

Not withstanding such extension, suspension or re-negotiation of the payment as aforesaid, the within Note, as well as the Deed of Trust executed contemporaneously herewith shall remain in full force and effect, and shall be legally binding; and upon the happening of any of the aforesaid events, it shall not be necessary for the Borrower(s) to re-execute new instruments or documentation setting forth such modifications.

6. **DEFAULT**
If default be made in the payment of any installment under this Note, the entire principal sum and accrued interest shall at once become due and payable without notice at the option of the holder of this Note. Failure to exercise this option shall not constitute a waiver of the right to exercise the same in the event of any subsequent default. Borrower(s) shall pay to the Note holder a late charge of five (5) percent of any monthly installment not received by the Note holder within ten (10) days after the installment is due.

7. **SECURED PROPERTY**
This Note is secured by a ___First___ Deed of Trust of even date herewith, on property located in the City/County of ___Martinsville___ and the State of ___Virginia___, to the Martinsville Dupont Credit Union, Inc., conveying certain real estate therein described. The terms, covenants, conditions, provisions, stipulations, and agreements in said Deed of Trust contained are hereby made a part hereof to the same extent and with the same effect as if the same were fully set forth herein.

8. **PRESENTMENT, PROTEST AND NOTICE WAIVED**
Presentment, Notice of Dishonor, and Protest are hereby waived by all makers, sureties, guarantors and endorsers hereof. The drawers and endorsers of this Note also waive the benefit of the homestead exemption as to this debt. This Note shall be the joint and several obligation of all makers, sureties, guarantors and endorsers, and shall be binding upon them and their successors and assigns.

9. **ATTORNEY'S FEES**
If this Note is not paid at maturity, and is collected by suit or Attorney, the makers and endorsers hereof agree to pay, in addition to the amount of this Note, fifteen (15%) percent collection fees, together with reasonable Attorney's fees.

Address ___3697 Oak Level Road___  _William L. Ficken_ (SEAL)
___Bassett, VA  24055___  William L. Ficken (SEAL)

This is to certify that this is the Adjustable Payment Deed of Trust Note described in and secured by a Deed of Trust date ___November 15___, 20 01 , on property located in ___Martinsville___, Virginia.

My commission expires: ___November 30, 2004___

_Carolyn M. Neighbor_
Notary Public – Carolyn N. Neighbor