IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | |
| **WILLIAM L. FISHER** | ) | |
| | ) | |
| Debtor. | ) | CASE NO. 14-61076 |

## MEMORANDUM OPINION

This matter comes before the Court on the motion of the Debtor, William L. Fisher ("Debtor"), by counsel, to dismiss his pending Chapter 13 case pursuant to 11 U.S.C. § 1307(b). Dkt. No. 96. Immediately after the Debtor filed his motion, creditor Robert Swofford ("Swofford"), by counsel, filed a motion to convert the Debtor's case to Chapter 7 pursuant to 11 U.S.C. § 1307(c). Dkt. No. 97. The Court requested briefing from both parties on the applicability of *Law v. Siegel*, 134 S. Ct. 1188 (2014), to the relief requested in the competing motions, and Christopher Micale, the Chapter 13 Trustee (the "Chapter 13 Trustee"), also filed a brief, advocating dismissal instead of conversion. The Court held a hearing on March 11, 2015, to hear the arguments of counsel and to consider whether the case should be dismissed or converted. For the reasons stated below, the Court will grant the Debtor's Motion to Dismiss pursuant to Section 1307(b). However, the Court will impose a bar to refiling by the Debtor for 180 days from the order of dismissal.

## FINDINGS OF FACT

The Debtor and Swofford, a significant secured creditor and an alleged former business associate of the Debtor, have a contentious past, and they have litigation pending against each other in multiple courts at present.[1]  On June 4, 2014, the Debtor filed a bankruptcy petition *pro se*

---
1. The Debtor has filed suit against Swofford in both the Circuit Court of Franklin County, Virginia, and the United

under Chapter 13 of the Bankruptcy Code, 11 U.S.C. § 1301 *et seq*. He subsequently filed his schedules on July 2, 2014, along with his initial Chapter 13 plan, all *pro se* as well. On September 11, 2014, Swofford filed a motion for relief from stay against the Debtor, scheduling a hearing for October 27, 2014, before this Court. Martinsville Dupont Credit Union ("MDCU") also filed a motion for relief against one of the Debtor's more significant real estate assets, and it was also set for hearing on October 27, 2014. Dkt. Nos. 30, 35. On September 26, 2014, Stephen E. Dunn, an attorney experienced in representing Chapter 13 debtors in this District, appeared for the Debtor and filed a response to Swofford's motion for relief. Dkt. Nos. 45, 46. Objections to the Chapter 13 plans proposed by the Debtor were later filed by Swofford, MDCU, Branch Banking and Trust Company, the Chapter 13 Trustee, and the Virginia Division of Child Support Enforcement.[2] Dkt. Nos. 21, 24, 43, 44, 54, 66, 72, 75, 85, 95. After a trial on October 27, 2014, the Court found cause existed to lift the stay, including lack of adequate protection to the secured creditors, and on November 7, 2014, granted both Swofford and MDCU relief to exercise their available rights against certain properties of the Debtor. Mem. Op., Dkt. No. 56.

On December 5, 2014, the Debtor moved for reconsideration of the Court's order granting relief from stay, and the reconsideration motion, which the Court treated as a motion to alter or amend its judgment, was denied by order entered January 13, 2015. Dkt. Nos. 79, 87. At approximately the same time, the Debtor initiated his first adversary proceeding against Swofford

---

States District Court for the Western District of Virginia, in each case seeking to have foreclosures enjoined. The Debtor has also filed two adversary proceedings against Swofford in this case, Adversary Proceeding Nos. 14-06072 and 15-06008, alleging a variety of contractual claims and intentional torts, including fraud, defalcation of fiduciary duty, and conversion. Compl. ¶¶ 43–59, Dkt. No. 1, Adv. P. No. 14-06072 (Bankr. W.D. Va. Dec. 5, 2014); Compl. ¶¶ 37–56, Dkt. No. 1, Adv. P. No. 15-06008 (Bankr. W.D. Va. Jan. 13, 2015). Swofford, in turn, has claimed that the Debtor is fraudulently concealing assets in his bankruptcy case. Mot. to Convert ¶ 2, Dkt. No. 96.

2. The Division of Child Support Enforcement's Objection to Confirmation was sustained by an agreed order entered October 24, 2014, giving the Debtor fourteen (14) days to file a modified plan. Order Sustaining Objection by DCSE, Dkt. No. 48.

in this Court, and then began proceedings in state court. After adverse rulings in both state court and in the District Court, and faced with multiple objections to his Chapter 13 plan, the Debtor moved this Court to dismiss his case pursuant to 11 U.S.C. § 1307(b).[3] The Debtor argues that the right of a debtor to dismiss his Chapter 13 case, which has not been previously converted, is absolute and not limited, and asserts that the Court does not have discretion to deny the Debtor's Motion to Dismiss, much less convert it when he seeks dismissal. The Chapter 13 Trustee supports the Debtor's interpretation of Section 1307(b). Swofford, however, opposes such a dismissal and, on the same day the Debtor moved to dismiss, filed a motion to convert this case to a case under Chapter 7 pursuant to 11 U.S.C. §§ 1307(c)[4] and 105. Swofford argues that a

---

3. 11 U.S.C. § 1307(b) provides as follows: "**(b)** On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable." This case has not previously been converted from any other chapter.

4. 11 U.S.C. § 1307(c) provides as follows:

> **(c)** Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—
> **(1)** unreasonable delay by the debtor that is prejudicial to creditors;
> **(2)** nonpayment of any fees and charges required under chapter 123 of title 28;
> **(3)** failure to file a plan timely under section 1321 of this title;
> **(4)** failure to commence making timely payments under section 1326 of this title;
> **(5)** denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
> **(6)** material default by the debtor with respect to a term of a confirmed plan;
> **(7)** revocation of the order of confirmation under section 1330 of this title, and denial of confirmation of a modified plan under section 1329 of this title;
> **(8)** termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;
> **(9)** only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521(a);
> **(10)** only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521(a); or
> **(11)** failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

debtor's right to dismiss voluntarily a Chapter 13 case may be limited by a debtor's bad-faith conduct or abuse of the bankruptcy process, which Swofford contends is present here.[5] It is the discord between a debtor's right to dismiss under Section 1307(b), allegations of bad faith, and a creditor's motion to convert that this Court now addresses, particularly in light of the impact of *Law v. Siegel*, which speaks to the Bankruptcy Court's power to fashion equitable relief in the presence of express statutory language that instructs otherwise.

## JURISDICTION

The Court has jurisdiction of this matter by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia. This Court further concludes this matter is a "core" bankruptcy proceeding within the meaning of 28 U.S.C. § 157(b). Venue is appropriate in this Court under 28 U.S.C. § 1409(a).

## CONCLUSIONS OF LAW

### I. A Debtor's Right to Dismiss Pursuant to Section 1307(b)

Section 1307(b) of the Bankruptcy Code provides that "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter." Prior to *Law*, courts were divided as to whether a bad-faith debtor has an absolute right to dismiss a Chapter 13 case under Section 1307(b). *See*

---

5. At oral argument, when pressed on the allegation of bad faith, Swofford contends that this Debtor's failure to contribute monies from his mother's estate and from a trust to his Chapter 13 plan provides the requisite foundation. However, the Chapter 13 Trustee advised that these assets were adequately disclosed in the Debtor's schedules and information was provided to the Trustee. Even if bad faith were the applicable standard to bar dismissal, the Court is not persuaded that the factual basis exists here. Nevertheless, as the Court has been confronted with the issue here on more than one occasion in the last year, the Court will address the merits of the Section 1307(b) and (c) discourse.

*Mitrano v. United States (In re Mitrano)*, 472 B.R. 706, 710 (E.D. Va. 2012) (comparing *In re Williams*, 435 B.R. 522 (Bankr. N.D. Ill. 2010), with *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764 (9th Cir. 2008)). As explained herein, *Law* changed the playing field. Given the recent instruction of *Law*, this Court agrees that the framework and analysis of Section 1307(b) set forth in *Williams* sets the proper course:

> [T]he question is a straightforward one of statutory construction, which can be resolved in three steps. First, the language of § 1307(b) gives debtors in unconverted Chapter 13 cases an unqualified right to dismissal. Second, a court may not modify a statute simply because the court believes a different version would implement good policy; any limitation on § 1307(b) would have to come from another statutory provision. And third, no statutory provision applicable here limits the right to dismissal under § 1307(b).

*Williams*, 435 B.R. at 554.

*A. Based on the Plain Language of Section 1307(b), a Debtor's Right to Dismiss a Case Which Has Not Been Converted Is Absolute.*

The initial consideration for determining the extent of a debtor's right under 11 U.S.C. § 1307(b) is the plain language of that provision. The first sentence of Section 1307(b) contains three clauses. The first clause—"[o]n request of the debtor at any time"—clarifies that the right to request dismissal belongs to the debtor and is not limited to any procedural posture or by any temporal deadline. The second clause—"if the case has not been converted under section 706, 1112, or 1208 of this title"—imposes the only limitation on the right of a debtor to request dismissal under this provision; that is, a debtor may not exercise the right to dismissal under Section 1307(b) if the debtor had previously converted his case to Chapter 13 from Chapter 7, 11, or 12. These first two clauses set the scene for the directive to a bankruptcy court contained in the final and third clause—"the court shall dismiss a case under this chapter." Congress's use of

"shall," as opposed to "may," highlights the fact that a bankruptcy court does not have discretion when ruling on a motion to dismiss under Section 1307(b) if the debtor makes such a request and the case has not previously been converted to Chapter 13 from another chapter. The statutory language therefore is patently clear that a bankruptcy court must dismiss a Section 1307(b) eligible Chapter 13 case when a debtor moves the court to do so.[6]

*B. Bad-Faith Concerns Do Not Curb a Debtor's Right to Dismiss Under Section 1307(b).*

Some courts interpreting Section 1307(b) have found an exception to the absolute right to dismissal if the debtor has engaged in bad-faith conduct or abuse of the bankruptcy process. *See, e.g., Jacobsen v. Moser (In re Jacobsen),* 609 F.3d 647, 660–61 (5th Cir. 2010); *Rosson,* 545 F.3d at 772–74; *In re Caola,* 422 B.R. 13, 20 (Bankr. D.N.J. 2010). The majority of these courts denying a debtor's absolute right to dismiss argue that refusing to apply the bad-faith exception would allow debtors engaging in bad-faith conduct to escape consequences for their acts. This Court is not persuaded that grafting a bad-faith exception into Section 1307(b) is appropriate given that the statute itself contains no basis for such a deviation. Further, 11 U.S.C. § 105 cannot be used by a court to do through the back door what the Code does not allow through the front.[7] "It is hornbook law that § 105(a) 'does not allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code.'" *Law,* 134 S. Ct. at 1194 (quoting 2 Collier on Bankruptcy ¶ 105.01[2], at 105–06 (16th ed. 2013)).

*1. Sanctions for Bad-Faith Conduct and Abuse of Bankruptcy Process Exist*

---

6. Because the Court finds the language of the statute is clear, it sees no need to resort to legislative history for guidance. *Coleman v. Cmty. Trust Bank (In re Coleman),* 426 F.3d 719, 725 (4th Cir. 2005) ("If the language is plain and 'the statutory scheme is coherent and consistent,' we need not inquire further." (quoting *United States v. Ron Pair Enters.,* 489 U.S. 235, 240–41 (1989)).

7. Section 105(a) provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. 11 U.S.C. § 105(a).

*Independent of Section 1307(b).*

A judicially imposed bad-faith exception to Section 1307(b) remains unnecessary as a punitive measure for a debtor's bad-faith conduct, because alternative remedies exist to address such behavior post-dismissal. *See, e.g.*, *In re Criscuolo*, No. 09-14063, 2014 WL 1910078, at *5 (Bankr. E.D. Va. May 13, 2014) ("This Court retains the authority to sanction a debtor's bad faith conduct so long as such sanctions do not contravene any explicit provisions of the Bankruptcy Code.").

Section 109(g)(2), for example, imposes a 180-day bar against the debtor on refiling if "the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title." 11 U.S.C. § 109(g)(2); *see also id.* § 109(g)(1) (imposing a 180-day bar on refiling if a case was dismissed for willful failure to abide by court order or for failing to appear and to prosecute the case). Other examples may be found in Section 326(c)(3), which limits the duration of the automatic stay following the dismissal of a debtor's case in the previous year, and Section 326(c)(4), which precludes a debtor from the benefits of the automatic stay if that debtor has had two cases dismissed within the previous year. 11 U.S.C. § 362(c)(3), (4).

Further, a bankruptcy court may impose additional sanctions in granting the debtor's motion to dismiss. "There is certainly nothing in Section 1307(b) that prohibits a dismissal on terms and conditions, including a proscription on re-filing a case for a defined period of time." *Criscuolo*, 2014 WL 1910078, at *5. A bankruptcy court may bar the discharge of certain debts in a subsequently filed case that were dischargeable in a previous case because of bad-faith conduct or abuse of the bankruptcy process. *See* 11 U.S.C. § 349(a) ("<u>Unless the court, for cause,</u>

<u>orders otherwise</u>, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed . . . .") (emphasis added); *see also Colonial Auto Ctr. v. Tomlin (In re Tomlin)*, 105 F.3d 933, 937 (4th Cir. 1997) ("Generally, only if a debtor engages in egregious behavior that demonstrates bad faith and prejudices creditors-for example, concealing information from the court, violating injunctions, or filing unauthorized petitions-will a bankruptcy court forever bar the debtor from seeking to discharge then existing debts.").

### *2. The Right to Dismiss Harmonizes with Other Code Sections.*

Chapter 13 is purely voluntary. *See* 11 U.S.C. § 303(a) ("An involuntary case may be commenced only under Chapter 7 or 11 of this title . . . ."). "To allow a creditor to convert a Chapter 13 case to a Chapter 7 liquidation notwithstanding a pending motion to dismiss filed by the debtor would permit the creditor to effectuate an involuntary petition without the need to satisfy the requisites of § 303." *In re Patton*, 209 B.R. 98, 102 (Bankr. E.D. Tenn. 1997); *see also Williams*, 435 B.R. at 557 ("The effect of § 1307(b) is to support the longstanding voluntary nature of Chapter 13."); *In re Thompson*, No. 10-23017, 2015 WL 394361, at *3 (Bankr. E.D. Ky. Jan. 29, 2015) ("The Court finds the *Patton* analysis persuasive.").

### *C. No Statutory Provision Limits a Debtor's Right to Dismiss Under Section 1307(b).*

"Of course, if Congress enacts a statutory provision with limitations, the courts must enforce them." *Williams*, 435 B.R. at 557. The only statutory limitation contained within the subsection is the requirement that the case has not been previously converted from another chapter. This "conversion limitation 'demonstrates that Congress was mindful of limitations on a debtor's right to dismiss and knew how to express such limitations that it deemed appropriate.'"

8

*Thompson*, 2015 WL 394361, at *3 (quoting *Patton*, 209 B.R. at 101). If Congress intended to further limit the right, it could have included further limitation in the subsection.

Additionally, Congress did not include any statutory limitation to be found outside of Section 1307(b). This fact is perhaps best illustrated by comparison of Section 1307(b) with Section 706(a) and the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007). Section 706(a) of the Bankruptcy Code provides that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title." 11 U.S.C. § 706(a). In *Marrama*, the Supreme Court held that a debtor who engages in bad-faith conduct loses his right to convert under Section 706(a). *Marrama*, 549 U.S. at 371.

This holding was based in part on the fact that "[t]he text of § 706(d) . . . provides adequate authority for the denial of [the debtor's] motion to convert." *Id.* at 374. Section 706(d) provides that "a case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 706(d). Section 706(d) therefore serves as an eligibility limitation to conversion from Chapter 7 to Chapter 13. The Supreme Court interpreted the "for cause" basis for conversion or dismissal of a Chapter 13 case pursuant to Section 1307(c) to include bad-faith conduct and thus determined that a debtor's bad-faith conduct barred the debtor from being eligible to be a debtor under Chapter 13. *Marrama*, 549 U.S. at 373; *see also Law*, 134 S. Ct. at 1197 ("In light of § 1307(c), the Court held that the debtor's bad faith could stop him from qualifying as a debtor under Chapter 13, thus preventing him from satisfying § 706(d)'s *express condition* on conversion.").

Some courts have interpreted *Marrama* to permit a bankruptcy court to impose a bad-faith

9

exception to Section 1307(b).[8] *See, e.g.*, *Mitrano*, 472 B.R. at 710–11 ("In essence, the Supreme Court in *Marrama* recognized that through bad-faith or fraudulent conduct, a debtor may forfeit certain rights otherwise available under the bankruptcy code."); *see also Jacobsen*, 609 F.3d at 660–61; *Rosson*, 545 F.3d at 772–74; *In re Caola*, 422 B.R. at 20. *Marrama*, however, is readily distinguished from cases dealing with the absolute right of Section 1307(b). First, *Marrama* interpreted Section 706(a), a provision which is similar to but not the same as Section 1307(b). Section 706(a) provides that a debtor "*may*" convert his case, while Section 1307(b) mandates that a court "*shall*" dismiss the unconverted case upon request. Second, there is no limiting provision on dismissal that mirrors the eligibility limitation of Section 706(d) which was crucial in *Marrama*. The only arguably analogous eligibility provision in Section 1307 is subsection (g). Section 1307(g), however, only limits the ability of a debtor to convert his case -- Section 1307(g) does not place any limitation on the absolute right of a debtor to dismiss his case under Section 1307(b). Furthermore, no other statutory provision limits the right to dismiss under Section 1307(b).[9]

*D. Application of a Bad-Faith Exception Contravenes the Bankruptcy Code and Exceeds the Authority of the Bankruptcy Court.*

The Court's role is not to redraft the statute, even if it perceives a need to deter and remedy

---

8. In an attempt to shoehorn this case into *Marrama*, Swofford's counsel argues that the entire petition was filed in bad faith and therefore the Debtor should not have been in Chapter 13 from the outset. The Court declines to follow that path, particularly when the creditor has actively participated in the case and never sought dismissal on that basis.

9. Limitations on dismissal, and additional flexibility, are present in Chapter 11 under 11 U.S.C. §1112(b). Section 1112(b) provides that "on request of a party in interest, and after notice and hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). The Bankruptcy Code lists sixteen, non-exclusive items that are included in the term "cause" for purposes of Section 1112(b). *See* 11 U.S.C. § 1112(b)(4). Had Congress intended to include similar language in Section 1307(b), it could have done so.

a debtor's bad-faith conduct in advance of a motion under 11 U.S.C. § 1307(b).  *Law* is instructive in that regard.  In *Law*, the Supreme Court was faced with an order of a bankruptcy court allowing a trustee to surcharge a debtor's homestead exemption.  134 S. Ct. at 1193.  The Supreme Court held that the bankruptcy court's order violated the express terms of 11 U.S.C. § 522 when it ordered the surcharge of the homestead exemption to which the debtor was entitled, finding that the bankruptcy court "exceeded the limits of its authority under § 105(a) and its inherent powers." *Id.* at 1195.  The Supreme Court specified that "in exercising those statutory and inherent powers, a bankruptcy court may not contravene specific statutory provisions."  *Id.* at 1194.

Given the guidance in *Law*, the right of the debtor to request a bankruptcy court to dismiss an unconverted Chapter 13 case becomes even more compelling.  If this Court were to refuse to grant the Debtor's request, in light of the Supreme Court's decision in *Law*, it would exceed its authority by acting in direct contravention of the express terms of Section 1307(b).  This Court declines to do so.

Based upon the language providing for a debtor's right pursuant to Section 1307(b), provided the other statutory prerequisites are met, and in light of recent Supreme Court precedent in *Law*, the Debtor's Motion to dismiss will be granted and the motion to convert will be denied. However, the Court will impose a 180-day bar to refiling. The Court granted relief from stay to both Swofford and MDCU on November 7, 2014.  Since then, the Debtor has moved for reconsideration of the Court's order granting relief from stay, and then filed two separate lawsuits, one in state court and one in federal court, seeking to enjoin foreclosures.  Having failed to obtain injunctive relief subsequent to relief from stay being granted, the Debtor now seeks to dismiss his Chapter 13 case.  Given the circumstances of this case, the Court finds a sufficient causal nexus

between the Court's order granting relief and the motion to dismiss sufficient to warrant the imposition of a 180-day bar to refiling within the scope of 11 U.S.C. § 109(g)(2).[10] *See First Nat'l Bank of Rocky Mount v. Duncan (In re Duncan)*, 182 B.R. 156 (Bankr. W.D. Va. 1995).

### III. Conclusion

The Debtor will be permitted to dismiss his case and Swofford's motion to convert will be denied. However, the Debtor will not be permitted to refile a new petition for relief under the Bankruptcy Code until after 180 days following the Order dismissing this case. An Order incorporating the Court's ruling will be issued contemporaneously herewith.

Decided this 19th day of March, 2015.

_____
UNITED STATES BANKRUPTCY JUDGE

---

10. 11 U.S.C. § 109(g)(2) provides, in pertinent part, as follows:

> **(g)** Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—
>
> . . . .
> **(2)** the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.